Opinion issued June 7, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-10-00652-CR; 01-10-00653-CR;
01-10-00654-CR; 01-10-00655-CR; 01-10-00656-CR; 01-10-00657-CR; 01-10-00658-CR;
01-10-00659-CR; 01-10-00660-CR; 01-10-00661-CR; 01-10-00662-CR 

———————————

William Andrew Allen, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 155th District Court

Waller County, Texas



Trial Court Case Nos. 12,976; 12,977; 12,978; 12,979; 12,980;
12,981; 12,982; 12,983; 12,984; 12,985; 12,986 

 



 

MEMORANDUM OPINION

Appellant
William Andrew Allen was convicted by a jury on eight counts of indecency with
a child,[1] one count of sexual assault
of a child,[2]
and two counts of aggravated sexual assault of a child.[3]  Punishment was assessed at 40 years’ confinement
on both counts of aggravated sexual assault, and 20 years’ confinement on each
count of indecency with a child and sexual assault of a child.  The trial court ordered the sentences to run
concurrently.  

Appellant timely appealed, seeking
a new trial because the trial court allegedly erred by admitting certain
evidence.  We affirm.

BACKGROUND

In a consolidated trial, appellant’s
three step-daughters each
testified in detail about being sexually molested by appellant.  The State also presented several other
witnesses who were familiar with the complainants or involved in the sexual-abuse
investigation, including a CPS investigator, a CPS case worker, the program
director of the Children’s Advocacy Center, a forensic interviewer with the
Children’s Advocacy Center, a clinical psychologist with the Children’s Crisis
Care Center, an assistant principal from one of the complainant’s middle
school, the complainants’ great aunt, a Sheriff’s Department Lieutenant
specializing in crimes against children, a board certified Child Abuse Pediatrician,
a Licensed Professional Counselor Intern, and an inmate who had spent time in
jail with the appellant.

The appellant testified that he did not molest the complainants, and
several people testified on his behalf, including the complainants’ mother,
grandmother, and aunt.  As no
sufficiency-of-the-evidence challenge has been advanced, we need not chronicle
all of this evidence in detail.  Instead,
we will focus on the evidence relevant to our analysis of the appellant’s
evidentiary challenges.  

ISSUES ON APPEAL

Appellant raises three issues on
appeal:

(1)            
“Whether the court erred in allowing the admission of a pornographic
video tape over objection under Rule 403 that the probative value, if any, was
outweighed by the danger of unfair prejudice.”

(2)            
“The trial court erred in allowing the State’s witness, Assistant
Principal, Rose Uherek to testify that the Defendant’s step child, a
complainant in his case, often came to school with bad hygiene over objection
that said evidence was not relevant.”

(3)            
“The trial court erred in allowing the State’s witness, Assistant
Principal, Rose Uherek to testify that the defendant’s step child, a
complainant in this case, often came to school with bad hygiene over objection
that the probative value, if any, was outweighed by the danger of unfair
prejudice.”

APPLICABLE LAW

A.   Relevance

Evidence is “relevant” if it has
“any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without
the evidence.” Tex. R. Evid. 401.
 Relevancy is “predicated on a subjective
relationship between the proffered evidence and a fact that is of consequence
to the determination of the action.”  Carter v. State, 851 S.W.2d 390, 391
(Tex. App.—Fort Worth 1993, pet. ref’d).  Evidence that is not relevant is not
admissible. Tex. R. Evid. 402.  A court’s ruling on the relevance of evidence
is reviewed for an abuse of discretion.  Fox v. State, 115 S.W.3d 550, 558 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d). 


B.   Rule 403

Texas Rule of Evidence 403
provides: “Although relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  In other words, “[r]elevant evidence is
generally admissible, but it is properly excluded under Rule 403 when its
probative value is substantially outweighed by the danger of unfair prejudice.”  Casey
v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  “In keeping with the
presumption of admissibility of relevant evidence, trial courts should favor
admission in close cases.”  Id. (citing Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990)).

The term “‘probative value’ refers
to the inherent probative force of an item of evidence—that is, how strongly it
serves to make more or less probable the existence of a fact of consequence to
the litigation—coupled with the proponent’s need for that item of evidence.”  Gigliobianco
v. State, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).  “‘Unfair prejudice’ refers to a tendency to
suggest decision on an improper basis, commonly, though not necessarily, an
emotional one.”  Gigliobianco, 210 S.W.3d at 641(citing State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)).  “Evidence might be unfairly prejudicial if,
for example, it arouses the jury’s hostility or sympathy for one side without
regard to the logical probative force of the evidence.”  Casey,
215 S.W.3d at 880. 

When conducting the balancing test
under Rule 403, the trial court determines whether the probative value of the
evidence is substantially outweighed by one of the following countervailing
considerations listed in the rule. See,
e.g., Casey, 215 S.W.3d at 879.  The trial court is given wide latitude in
weighing the concerns of unfair prejudice under Rule 403.  See
Mozon v. State, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999); Montgomery, 810 S.W.2d at 391–92.  In reviewing the trial court’s balancing test
determination under rule 403, we presume that the probative value of the
evidence outweighs any prejudicial effect.  Montgomery,
810 S.W.2d at 391.  We reverse the trial
court’s ruling “rarely and only after a clear abuse of discretion.”  Mozon,
991 S.W.2d at 847 (quoting Montgomery,
810 S.W.2d at 392).

C.   Harm Analysis

If the court determines on appeal
that the trial court erred in the admission or exclusion of evidence, it then
must determine whether such error mandates reversal.  Fox,
115 S.W.3d at 563.  In a case such as
this one, when the appellant does not argue that any error was constitutional,
the court assesses whether it is reversible error because it affected appellant’s
substantial rights. Tex. R. App. P.
44.2(b) (“Any other error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded.”); Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (“The
appropriate standard of harm is to disregard an error unless a substantial
right has been affected.”).  Error affects
a substantial right when it has a “substantial and injurious effect or
influence in determining the jury’s verdict.” 
Johnson, 43 S.W.3d at 4.  The Court of Criminal Appeals instructs us to
look at the record as a whole in making this determination:

In assessing the likelihood
that the jury’s decision was adversely affected by the error, the appellate
court should consider everything in the record, including any testimony or
physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, the character of the alleged error and how it
might be considered in connection with other evidence in the case. The
reviewing court might also consider the jury instruction given by the trial
judge, the State's theory and any defensive theories, closing arguments and
even voir dire, if material to appellant’s claim.

 

Morales v.
State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

PORNOGRAPHIC VIDEO TAPE

State’s Exhibit 6 was a picture of
a VHS tape with the title “Adam and Eve, Red Light District with Girls.”
Officer Brian Cantrell testified that the tape contained pornographic material
and that he found it on a desk in appellant’s bedroom.  He further testified that the tape was
confiscated during a search of appellant’s house for evidence to corroborate
the complainants’ outcry statements.  On
cross-examination, Office Cantrell clarified that the tape contained only adult
pornography.    

When Exhibit 6 was introduced,
appellant’s counsel objected to both relevance and undue prejudice:

State’s Exhibit Number 6, Judge, I would
object to it as not being relevant and probative value, if any, is outweighed
by the danger of unfair prejudice.

The State responded that the tape corroborates one
of the complainants’ statements:

Your Honor, Lieutenant Cantrell stated that
when they were going to execute the search warrant that they were looking for
things that corroborated what the outcry or the victim’s statements were, and
this is one of the pictures that were found that were taken in the house that
corroborates what the victim stated was inside the house.  

Noting that it was for the jury “as to whether it
corroborated or not,” the court overruled the appellant’s objection to the
picture of the VHS tape.  

In his first point of error,
appellant argues that the probative value of the photograph of the pornographic
tape was outweighed by the danger of unfair prejudice because the tape “carried
strong character implications.”  He
points out that he is “alleged to have committed sexual assault on children,”
but that the court admitted into evidence “a pornographic video of unrelated
adults having sex,” which only involved “pornographic actors and did not
involve either the defendant or any of the alleged victims.”  This tape, he contends, “could easily
‘arouse[] the jury’s hostility or sympathy for one side without regard to the
logical probative force of the evidence.”  Gigliobianco,
210 S.W.3d at 640–41.  He stresses that he had a right to be tried
only on the crimes charged, not “extraneous acts” that might meet the jury’s
disapproval. 

The appellant acknowledges the
State’s argument that the presence of a pornographic tape corroborated  one complainant’s testimony that appellant
forced her to watch pornography, but notes that “neither in the child’s
testimony or in Officer Cantrell[’s] did he ever say that the child identified
this particular tape as one she viewed.” 
Given this, and given that “all three child witnesses and the outcry
witness testified” as to the complainants’ allegations, appellant argues “the
state’s need for the evidence was outweighed by danger of unfair prejudice and
the potential harm to the defendant of the pornographic tape.” 

In response, the State emphasizes
the considerable discretion afforded to trial courts in evidentiary decisions
that “should not be reversed unless th[e] ruling falls outside of the ‘zone of
reasonable disagreement,’ Salazar v.
State, 38 S.W.3d 141, 153–54 (Tex.
Crim. App. 2001), even if the trial court gives the wrong reason for [its]
decision so long as the decision is correct on any theory of law applicable to
the case.” Osbourn v. State, 92
S.W.3d 531, 538 (Tex. Crim. App. 2002).  

Here, the State argues, one of the
complainants testified that appellant made her watch pornographic movies with
him and would make her try to engage in the same sexual acts portrayed in the
movie.  While she did not testify to the
movie introduced being one of the movies she watched with appellant, the State
contends that because there was testimony that appellant watched pornographic
videos with one of his step-daughters before sexually assaulting her, admitting
the picture of pornographic video found in appellant’s room had some relevance
to the issues for the jury to decide.  

Finally, according to the State,
given the other evidence related to appellant’s viewing of pornographic
materials, “[a]ny prejudicial effect, if there is any shown at all, did not
affect the defendant’s right to a fair trial and not have an injurious effect
or influence on the jury’s verdict.”  The
State also notes that appellant “received a limiting instruction in the charge
to the jury.”[4]  

The jury was not shown the contents
of the video tape at issue.  It was shown
a picture of the tape showing the title “Adam and Eve, Red Light District with
Girls,” and Office Cantrell testified that it contained adult pornography.  Thus, the issue is not whether anything
particular on the tape was unduly prejudicial but, rather, whether the fact
that appellant possessed adult pornography would “arouse[] the jury’s hostility
or sympathy for one side without regard to the logical probative force of the
evidence.” Gigliobianco, 210 S.W.3d
at 640–41.  We conclude, viewing the record as a whole, that
the trial court did not commit reversible error by admitting the picture of the
pornographic video tape.

It is well settled that “Rule 403
requires an admissible photograph to possess ‘some probative value and that its
probative value not be substantially outweighed by its inflammatory nature.’”  Krause
v. State, 243 S.W.3d 95, 105 (Tex. App.—Houston [1st Dist.] 2007, pet.
ref’d) (quoting Santellan v. State,
939 S.W.2d 155, 172 (Tex. Crim. App. 1997)). 
To make this determination, we “consider these general rule 403 factors:
(1) the probative value of the evidence; (2) the potential to impress the jury
in some irrational, yet indelible, way; (3) the time needed to develop the
evidence; and (4) the proponent’s need for the evidence.” Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

Probative Value

Here one complainant testified that,
on more than one occasion, appellant made her watch “a sexual movie,” in which
“there would be guys and girls trying to have sex with each other.”[5]  She testified that she “would try not to”
watch the movie, because of its sexual nature. 
At least once, appellant told her he wanted to try having sex with her
in a way portrayed in the film, and she told him that she did not want to, but
he made her.  

Officer Cantrell, a Waller County
Sheriff’s Lieutenant in the crimes-against-persons division, testified that
pornography is often used to groom child victims of sexual crimes:

My experience, grooming basically is employed
by sexual predators, to simplify it, what sexual predators will do is they will
introduce children to maybe certain photographs of that, that are pornographic,
not necessarily child pornography, but in the case of child pornography, what
they will do is they will gauge their reaction to this child pornography, they
often use it as a way to warm the child.  Grooming is also referred to as warming the
child, and this is what these images are used for. 

Given the complainant’s testimony about the
appellant’s use of pornography in his bedroom immediately before sexually
assaulting her and Office Cantrell’s testimony about the use of pornography in
grooming child sexual assault victims, the picture of a VHS tape containing
pornography found in appellant’s bedroom had some probative value in
corroborating at least one of the complainant’s versions of events. 

Prejudicial Effect

“‘Unfair prejudice’ refers to a
tendency to suggest decision on an improper basis, commonly, though not
necessarily, an emotional one.”  Casey, 215 S.W.3d at 879.  But, as the Court of Criminal Appeals has
explained, the fact that evidence is detrimental does not render it unfairly
prejudicial.   

Unfair prejudice does not arise from the mere
fact that evidence injures a party’s case. Virtually all evidence that a party
offers will be prejudicial to the opponent’s case, or the party would not offer
it.  Cohn
v. State, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Evidence is unfairly
prejudicial only when it tends to have some adverse effect upon a defendant
beyond tending to prove the fact or issue that justifies its admission into
evidence. United States v. Figueroa,
618 F.2d 934 (2d Cir. 1980).  The
prejudicial effect may be created by the tendency of the evidence to prove some
adverse fact not properly in issue or unfairly to excite emotions against the
defendant. See id.

Casey, 215
S.W.3d at 883.

The admission of legally possessed
“sex toys and other sexually oriented materials” has been found to constitute
reversible error under Rule 403 in an indecency-with-a-child case in which
“nothing in the record . . .  would
connect the sex toys to the State’s allegations of indecency with a
child.”  Warr v. State, ___ S.W.3d ___, No. 06-08-00089-CR, 2009 WL 996028,
at *4–5 (Tex. App.—Texarkana April
15, 2009, no pet.) (erroneous admission of items, used by State to argue that
because of defendant’s “predilection towards sex, things sexual, it’s not a
stretch to see then the extension of that onto the area that we’ve seen with
the [child complainant]” was not harmless). 
 

Balancing and Harm

Appellant complains that the trial
court admitted the pornographic video tape without “performing any type of
balancing test as required under Rule 403.”   
But “[w]hen, as in this case, the record is silent as to the trial
court’s balancing of these factors, we presume the trial court conducted the
balancing test.”  Bargas v. State, 252 S.W.3d 876, 893 (Tex. App.—Houston [14th
Dist.] 2008, no pet.).

While the tape contained only adult
pornography, its probative value was in the corroboration of the complainant’s
testimony, especially here where the defendant called the complainants’
credibility into question.  Moreover, when
there is unobjected-to testimony about the subject-matter of an exhibit, that
can undercut an appellant’s argument as to the unfair prejudicial effect of the
exhibit.  E.g., Kolanowski v. State,
Nos. 02-10-00163-CR; 02-10-00146-CR, 2011 WL 1797310, at *4 (Tex. App.—Fort
Worth April 21 2011, no pet.) (mem. op.; not designated for publication).  In addition to the admission of the picture
of the pornographic tape, Officer Cantrell provided unobjected-to testimony
about similar materials found on appellant’s computer.  

There were several photographs of adult
pornography.  There were several
photographs of naked men, naked women, several photographs of adults being two
to three at a time engaging in sexual intercourse.  

“Evidence is unfairly prejudicial
only when it tends to have some adverse effect upon a defendant beyond tending
to prove the fact or issue that justifies its admission into evidence.”  Casey,
215 S.W.3d at 883.  Given the probative
value of the pornographic tape, coupled with the non-graphic nature of the
photograph of the tape, the relatively short amount of time the State focused
on the evidence, and the other unobjected-to testimony about similar materials
in appellant’s bedroom, we conclude that the trial court did not abuse its
discretion in concluding that the probative value of the tape was not
outweighed by unfair prejudice.  We
overrule appellant’s first point of error. 

HYGIENE TESTIMONY

During the State’s direct
examination, Rose Uherek, a middle-school assistant principal, was asked about
“other issues [one of the complainants] might have, like hygiene, for
instance.”  In response to appellant’s
objection to relevance, the following exchange took place between the State and
the court:

[The State]: Your Honor, we
are going to be having some testimony later from someone about specific
characteristics of sexual abuse, and —

[The Court]:  All right. 
If you believe you can connect it later, I will permit the
testimony.  Overruled.  

Appellant then lodged a Rule 403 objection, arguing
that the probative value, if any, was outweighed by the danger of unfair
prejudice.  The court overruled that
objection and permitted the testimony.   


A.      We did have some issues. I am assuming I can answer? We did
have some issues with [her] urinating on herself.

[The State]:                    Yes, ma’am.

Q.      And other hygiene issues?

A.      Yes. When she came to us at the middle school, she would come to
us with a body odor that was very offensive, that we actually allowed her to go
in the nurse’s office and shower. Then we would, we had extra clothes there for
her, and we would actually take the clothes, her clothes down to the locker
room and wash them and then allow her to put them back on, but we let her shower
quite frequently in the nurse’s office at the school.

Q       When you say quite frequently, how often would you say that
was?

A.      Couple, three times a week. And we did have a conference with
the mother, and that did improve after that.

Fiona Remko, the Program Director of Fort Bend
County’s Children’s Advocacy Center, revisited this topic later, testifying
about “specific characteristics that are commonly amount children who have
experienced sexual abuse.” 

They may have trouble with hygiene issues.
They may actually add a lot of weight on, or on the flip side of it, they could
actually lose a lot of weight and a lot of that is just trying to change their
body and how they look so they may appear to be less attractive to somebody. 

Maria Peters, a therapist
extensively trained in sexual-abuse cases that sees each of the complainants
weekly, likewise testified to hygiene issues by the same complainant as a
symptom or characteristic of a child who has been sexually abused.   

In his second point of error,
appellant argues that Uherek’s testimony about one of the complainant’s bad
hygiene was not relevant.   In his third
point of error, he argues that the probative value, if any, of this testimony
was outweighed by unfair prejudice. 

A.   Relevance

Appellant characterizes the
testimony about his step-daughter’s bad hygiene as extraneous evidence that
“would go to the character of the accused as a bad parent.”  He complains that when Uherik testified, “the
state offered only a loose promise to connect [it] later, i.e., to make it
relevant later.”  Appellant argues that
this is improper, as the State should be required to demonstrate relevance at
the time the appellant objects to lack of relevance rather than promise to
demonstrate relevance later. 
Accordingly, appellant argues, “this evidence should have been excluded
where as here the state offered objectionable testimony without showing it was
then relevant [so] the court erred in admitting it.”  

In response, the State argues that
the relevance of Uherek’s testimony was established through the testimony of
both Fiona Remko and Maria Peters demonstrating that bad hygiene is
characteristic of a child sexual-assault victim.    The State also contends that the “trial
court has the discretion to grant leeway in the admission of relevant evidence,
allowing the sponsoring party the opportunity to establish relevance through
later testimony.”  Thus, the State argues,
there was no clear abuse of discretion by the trial court.  We agree.

Appellant does not argue that the
State failed to later demonstrate the relevance of Uherek’s testimony with
testimony from Remko and Peters. 
Instead, he argues that the relevance objection to Uherek’s testimony
should have been sustained when made because the State should be required to
establish relevance at the time that evidence objected to.  Appellant cites no authority for this
proposition and, in fact, numerous cases recognize that the potentially
irrelevant evidence can be admitted upon the condition that relevance will
eventually be linked.  E.g.,
Fischer v. State, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008); Powell v. State, 898 S.W.2d 821, 829
(Tex. Crim. App. 1994); Davis v. State,
268 S.W.3d 683, 715 (Tex. App.—Fort Worth 2008, pet. ref’d).  “If sufficient ‘connecting’ evidence does not
appear by the close of the proponent’s evidence, the opposing party must renew
his original objection by a motion to strike the conditionally admitted
evidence.”  Williams v. State, 82 S.W.3d 557, 563 (Tex. App.—San Antonio 2002, pet.
ref’d).  Because the trial court did not
err admitting Uherek’s testimony upon the State’s representation that its
relevance would be demonstrated through later testimony, and because appellant
has not argued here or in the trial court that the relevance of that testimony
was not demonstrated with later evidence, appellant has failed to demonstrate
that the trial court abused its discretion in admitting this testimony.  We overrule the appellant’s second point of
error. 

B.   Rule 403    

Appellant asserts that the
testimony about his step-daughter’s hygiene “served to convey to the jury that
the defendant was a bad parent and such testimony about hygiene could easily
‘arouse the jury’s hostility or sympathy for one side without regard to the probative
force of the evidence.’”   He insists
that such evidence was directed at his character, and that the trial court
admitted it without “performing any type of balancing test required under Rule
403.”  

We have already held that this
testimony had probative value in corroborating one of the complainants’
testimony and in showing circumstances consistent with sexual abuse.  “[W]e presume the trial court conducted the
balancing test” required by Rule 403 and concluded that this probative value
was not outweighed by unfair prejudice to the defendant.   Bargas
v. State, 252 S.W.3d 876, 893 (Tex. App.—Houston [14th Dist.] 2008, no
pet.).  On this record, where the only
articulated potential prejudice is the implication that appellant was “a bad
parent,” appellant has not demonstrated that this evidence suggested the jury
reach a verdict on an improper basis.  Gigliobianco, 210 S.W.3d at 641.  We thus cannot conclude that the trial court
abused its discretion by overruling the appellant’s Rule 403 objection.  We overrule appellant’s third point of error.

CONCLUSION

We affirm the trial court’s
judgment.

 
 

 

 

  

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Jennings and Keyes.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]
          trial court and appellate court
cause numbers 12976/01-10-00652-CR; 12977/01-10-00653-CR; 12978/01-10-00654-CR;
12979/01-10-00655-CR; 12980/01-10-00656; 12981/01-10-00657-CR;
12985/01-10-00661-CR; 12986/01-10-00662-CR  


 





[2]
          trial court and appellate court
cause numbers 12982/01-10-00658-CR 

 





[3]
          trial court and appellate court
cause numbers 12983/01-10-00659-CR; 12984/01-10-00660-CR 

 





[4]
          This is presumably a reference
to the extraneous-offense instruction included in the Court’s charge:

 

You are instructed that if there is any testimony before you in this case
regarding the defendant’s having committed offenses other than the offense alleged
against him in the indictment in this case, you cannot consider said testimony
for any purpose unless you find and believe beyond a reasonable doubt that the
defendant committed such other offenses, if any were committed, and even then
you may only consider the same with regard to the purpose for which such
evidence was offered and for no other purpose. 






[5]
          The trial court admitted this
testimony over appellant’s objections that it was irrelevant and that the
probative value was outweighed by the danger of unfair prejudice.